CORTÉS & SEGURA, INC., Plaintiff and Appellee, *v.* FERNANDO J. CORTÉS, Defendant and Appellant.

No. 4310.   Argued May 9, 1929.—Decided February 12, 1930.

O. B. Frazer and R. Castro Fernández, for appellant.   F. Soto Gras, for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

On September 5, 1922, Adolfo Valdés, Fernando J. Cortés and Enrique Segura formed a corporation under the name of "Cortés & Segura, Inc.," to do a general dry goods business, both wholesale and retail. The capital stock was fixed at two hundred thousand dollars, divided into two thousand shares, and the corporate business was commenced with $40,000 of paid-in capital, of which $20,000 was contributed by Valdés, $10,000 by Cortés, and $10,000 by Segura. Thereafter Segura withdrew from the corporation, and he received $10,000 in payment of his shares of stock. At the time of the commencement of the present action the total paid-up stock consisted of 499 shares, of which 331 belonged to Valdés, 160 to Cortés, 4 to Mariano Pesquera, and 4 to Francisco J. Rodríguez.

In 1925 the offices of president and treasurer-manager were still held by the same persons who had been elected thereto in the beginning, namely, Valdés as president, and Cortés as treasurer-manager.

At the end of 1925 certain differences of opinion existing between the president and the treasurer-manager became accentuated by reason of losses sustained in the business of the corporation, and because the president wanted to make a quick liquidation of the merchandise on hand at low prices while the treasurer-manager, although agreeing to the liquidation, was in fact delaying the same by keeping the prices high, in the hope that during the months of December and January the merchandise could be sold at a greater profit owing to the festivities of Christmas, New Year's Day and Epiphany.

At this stage of the matter the president wrote to Fernando J. Cortés a letter which, literally copied, reads thus:

"J. Ochoa & Bros., San Juan, P. R.—San Juan, Porto Rico, December 9, 1925.—Mr. Fernando J. Cortés, San Juan, Porto Rico.—Sir: Availing myself of the authority and powers inherent in the office I now hold and defined in the by-laws of the corporation 'Cortés

& Segura, Inc.,' I hereby remove you from the position of manager of the said corporation effective from this date.

"Pursuant thereto, you will forthwith cease acting as such manager and deliver the store of the said corporation located at No. 21, San Justo street, in this city, to my personal representative, Mr. Mariano R. Pesquera, who is hereby appointed as acting manager, together with all documents, funds and other things which may be in your possession as such manager.

"This decision is based upon acts of insubordination on your part which are prejudicial to the interests of the company, and it is in furtherance of the good conduct and management of the corporate business that you must cease as the incumbent of the said position. Respectfully, (Signed) A. Valdés, President, Cortés & Segura, Inc."

Cortés refused to deliver the business as directed and thereupon, on the following day (December 10, 1925), the action herein was instituted. The complaint, in so far as now pertinent, reads as follows:

"Now comes the plaintiff by its undersigned attorney and for its cause of action alleges:

"That the plaintiff is a corporation organized under the laws of Porto Rico.

"That the plaintiff has its principal office located at No. 21, San Justo street, in this city, in which place it also maintains a dry goods store known as 'El Mundo Elegante', which the plaintiff corporation conducts as a part of its business.

"That the defendant was appointed manager of the plaintiff corporation and, in that capacity, he took possession of the aforesaid establishment together with everything therein contained such as merchandise, account books, files, furniture, and other fixtures usually appertaining to such an establishment, which he managed in his capacity aforesaid.

"That the plaintiff corporation, through its president Adolfo Valdés Ordóñez, removed the defendant manager from office and requested him to deliver the said establishment, but the defendant refused to do so and has persisted in withholding and still withholds the possession of the said establishment against the will and express orders of the plaintiff corporation.

"WHEREFORE, the plaintiff demands that the defendant be adjudged to deliver to the plaintiff the possession of the establishment

mentioned in the within complaint, together with all goods and effects thereunto appertaining, and to pay the costs of this action.''

In his answer the defendant alleged:

''1.—That he admits the facts alleged in paragraphs 1, 2 and 3 of the complaint herein.

''2.—As regards the averments set forth in the fourth and last paragraphs of the complaint, he denies that the plaintiff corporation has removed the defendant from his office as manager of the establishment mentioned in the complaint, or that it has requested him to deliver said establishment, or that he has refused to make such delivery, or that at the time of the filing of the complaint he was withholding the possession thereof against the will and the express orders of the plaintiff corporation.

''3.—That the defendant was elected and appointed a director of the plaintiff corporation by unanimous vote at a regular meeting of stockholders of the said corporation and similarly appointed treasurer-manager thereof by its board of directors, ever since the latter was constituted, and that, at the time of the filing of the complaint and at all times therein mentioned, he was actually exercising his functions of such director and treasurer-manager.

''4.—That the defendant is, moreover, a stockholder and owns stock in the said corporation to the value of $11,000 at par.

''5.—That at no time after the organization of the corporation and up to the filing of the complaint herein, or since, has any resolution been adopted by the board of directors or stockholders of the said corporation removing the defendant from office, or authorizing the president of said corporation or anybody else to bring this or any other action against the defendant.

''6.—That the president of the said corporation, Adolfo Valdés, without the consent of the board of directors or of the stockholders thereof, and without any authority or power conferred upon him by the articles of incorporation or the by-laws of the said corporation, arbitrarily and for the sole purpose of injuring the defendant and causing him to lose all the capital invested by him in the said corporation and his reputation as a merchant, of his own initiative informed the defendant that he was discharged as manager of the said corporation; an authority and power which this defendant has refused and still refuses to acknowledge as valid.

''7.—That the defendant is the only person, under the by-laws of said corporation, entitled now and at all times mentioned herein to

the immediate possession and control of the property of the said corporation.

"8.—That the whole proceeding herein is nothing but a scheme on the part of the president of the said corporation, Adolfo Valdés, to get possession in an illegal and arbitrary manner, and without the consent of the corporation, of all its property in order to sell and dispose of the same in any manner he may choose, without consulting the other stockholders and directors, thereby destroying and dissolving the corporation and consequently rendering worthless in the market the stock of the defendant.

"WHEREFORE, the defendant asks for judgment dismissing the complaint herein, with costs."

Upon the issues thus made the case went to trial. The plaintiff, over the objection of the defendant, was allowed to introduce considerable evidence as to the divergencies which had arisen between the president and the treasurer-manager and as to the affairs of the corporation, and even in regard to events occurring subsequent to the filing of the complaint; and the court, based on the evidence thus introduced, rendered judgment against the defendant. The latter appealed, and he has assigned four errors, to wit: (1) In rendering judgment for the plaintiff; (2) in admitting evidence as to facts which occurred subsequent to the filing of the complaint; (3) in admitting evidence as to facts not alleged in the complaint; and (4) in awarding costs against the defendant.

The present action has been prosecuted under sections 170 *et seq.* of the Code of Civil Procedure and it was incumbent, therefore, upon the plaintiff to show (1) its ownership of the property claimed, and (2) wrongful detention of the property by the defendant.

The first element has been undoubtedly proved. The corporation Cortés & Segura, Inc. was the sole owner of the store and the goods claimed in the action herein.

Was the second element established? Let us see.

After the corporation was organized, its store "El Mundo Elegante" was opened at 38 San Justo street, at the corner

of Fortaleza street, in San Juan; and the defendant Cortés was at the head of this establishment, as manager thereof, when the controversy herein arose. By what authority?

Articles eighth and ninth of the certificate of incorporation of Cortés & Segura, Inc., read as follows:

"EIGHTH.—Except as otherwise provided by law or in these articles of incorporation, all the authority, powers, management and control of the corporation shall be exercised by a Board of Directors to be composed of such members as the by-laws may determine, who shall be *bona fide* stockholders of the corporation and shall hold office for one year and until their successors are elected and qualify. Any director who ceases to be a stockholder shall cease at once to be a director. Vacancies occurring by reason of absence or any other cause in the office of director shall be filled for the remainder of the term by the affirmative vote of a majority of the remaining directors; three directors shall constitute a quorum for the transaction of any business for which a meeting of the Board of Directors shall have been called.

"NINTH.—The Board of Directors shall elect from their number a President, a Vice-President, a Treasurer-Manager and a Secretary of the Board, who shall also act respectively as President, Vice-President, Treasurer, and Secretary of the corporation, and who shall have such powers and perform such duties as may be provided by law or in the by-laws of the corporation and shall receive such compensation or salaries as may be fixed by the stockholders at any meeting thereof, in consideration of the performance of their respective services."

Sections 1 and 2 of Article III of the by-laws of the said corporation read as follows:

"Article III.—Board of Directors.—Section 1. The management and control of all the affairs and property of the corporation shall be vested in a Board of Directors, consisting, at the most, of five directors, who shall be elected from among the stockholders at the annual meeting thereof, and their resolutions shall be valid, provided they are adopted by the affirmative vote of a majority of the directors present; three directors present shall constitute a quorum.

"Section 2. The directors shall elect from their number a President, a Vice-President, a Treasurer-Manager, and a Secretary, such election to be held on the same day in which the directors shall have been chosen by the stockholders."

And sections 1, 2, 4, and 5 of Article IV of the said by-laws provide:

"Article IV.—Executive Officers.—Section 1. The President, the Vice-President, the Treasurer-Manager, and the Secretary, and their substitutes or assistants by them appointed as may be necessary, shall be the executive officers of the corporation, who shall be elected at the first meeting of the Board of Directors held after the annual election of all the directors, and who shall hold office and perform their duties for the term of one year and until their successors are elected and qualify. The directors shall have discretionary power to appoint such other officers, agents, and employees as may be necessary, and to fix their compensation or salaries.

"Section 2.—The President shall be the chief executive officer and general manager of the company. He shall preside at all meetings of the stockholders and of the Board of Directors, conduct the discussions therein, and decide such questions of order as may arise in accordance with the established custom and practice. He shall have power to sign all contracts, obligations, and bonds in the name and behalf of the Company and, jointly with the Treasurer-Manager or his substitute, he shall sign all stock-certificates issued to stockholders. He shall prepare and submit annually at the last meeting of directors, next before the annual meeting of stockholders, a report covering all the operations and business of the corporation during the next preceding year, which report may be submitted to the annual meeting of the stockholders. He also shall have all other powers and duties which may be prescribed by the Board of Directors for the benefit of the corporation.

"Section 4.—The Treasurer-Manager shall have the custody of all funds and securities of the corporation instrusted to him, which he shall keep or deposit in such banks or other institutions as may be chosen by the Board of Directors, and he shall dispose of the same in the name of the corporation by draft, indorsement, check or any other form of transfer, signed by him or by any other officer, or substitute thereof, duly authorized therefor by the directors; and he shall receive and collect all monies due to or demandable by the corporation. He shall have and take charge of the management and administration of the business, subject to the direction of the Board; he shall sign all business correspondence and shall keep the account books of the corporation in accordance with the requirements of law. He shall subscribe, jointly with the President or with the officer designated for that purpose by the Board, the obligations, whether secured

or unsecured, contracted by the company and the stock-certificates issued to stockholders. He shall furnish bond for the faithful performance of his duties in such an amount as may be determined by the Board of Directors.

"Section 5.—In case of absence or disability of the Treasurer-Manager, the Board of Directors shall designate another director as a substitute or *ad interim* incumbent, with the same powers and duties as the titular incumbent."

A corporation is a juridical person distinct from the natural persons who compose it as stockholders, directors and officers. In its functioning it truly exemplifies a régime of law. That law in this case consists of the applicable statutory provisions enacted by the Legislature of Porto Rico and of the articles of incorporation and by-laws adopted thereunder by the individuals concerned.

Pursuant to its organic law, the management and administration of the business and property of Cortés & Segura, Inc., was intrusted to a board of directors.

A president and a treasurer-manager were required to be chosen from among the directors, and Valdés and Cortés, respectively, were elected to these offices and entered upon the discharge of their duties.

The treasurer-manager was placed in charge of "the management and administration of the business, subject to direction of the board of directors." We have been unable to find in the minutes of the meetings of the board any specific resolution on the point, but from the evidence introduced by the plaintiff it appears that, from the beginning and until the controversy herein arose, the treasurer-manager had personal charge of the management of the corporate store known as "El Mundo Elegante"; and that, accordingly, all the property contained in the said establishment was placed and remained in his immediate possession and custody.

There is no doubt that the president, as "chief executive officer and general manager of the company," had power to intervene in the administration of its affairs and to supervise

the management of the treasurer-manager; but it is perfectly clear to us that he had no power, acting by himself, to remove the treasurer-manager from his office as manager. If a conflict arose, it was his duty to submit the matter for decision to the board of directors, upon which it was incumbent, under the law, to settle the controversy. His failure to do so justified the plaintiff in his refusal to relinquish to the president, at the latter's individual request, an authority with which he had been invested by the board of directors.

That being so, it must be concluded that when the complaint was filed no cause of action existed against the defendant, since the possession of the property claimed was not withheld by him wrongfully.

The filing of the complaint was not authorized by the board of directors. It was filed by the president, on his own initiative, in the name of the corporation.

The appellee stresses the fact that Cortés was not removed by the president from his office as treasurer, but from his position as manager earning a salary; but we can not disregard that which was expressly stipulated and agreed in the articles of incorporation and in the by-laws. Cortés was not given the management of the said corporate establishment in the capacity of a mere salaried employee, but in his capacity as treasurer-manager of the corporation.

In his opinion the trial judge says, in part:

"But in the present case the evidence shows the existence of some special circumstances, which may be said to have created a real emergency necessitating the prompt intervention, with full authority, of the president in order to avoid greater injury to the corporation.

"Moreover, it has been shown that the President consulted with the only other director who, in addition to the defendant, made up the Board of Directors, and it was not to be expected that he should have also consulted with the defendant, since the latter was a hostile and biased party against whom quick action had to be taken, owing to the existing emergency.

"Besides, President Valdés was the largest holder of stock in the corporation.

"We reach the conclusion that the defendant was properly removed from office by the President, since the proof establishes that the defendant disobeyed the orders of the President (chief executive officer and general manager of the corporation) and that the defendant was appointed manager, on a salary basis, for the term of one year expiring on August 9, 1925, or prior to his removal, which took place on December 9, 1925, according to a letter of the same date ("Exhibit C" of the plaintiff.) The fact must not be overlooked that the defendant Cortés was removed only from his position as manager, but not from his office as treasurer of the corporation."

We have carefully examined the evidence and, although we believe that it shows that it was difficult for the directors and officers to continue acting in concert in the management of the business and that during the latter part of 1925 the business was continued by Cortés at a real loss to the corporation, since the sale made did not cover the expenses incurred, and that a liquidation became imperative, we are unable to find any showing of improper or fraudulent conduct on the part of Cortés, notwithstanding the vigor and tenacity of the investigation and attacks to which he was subjected before and during the trial. On the contrary, his attitude in waiting for the months of December and January for making the final liquidation seems logical, and the results obtained from the sale of the stock of merchandise under the liquidation support him in this.

We think that no emergency whatever was shown and, therefore, even conceding the soundness of the principles invoked by the appellee, it would still have to be concluded that the same are not applicable herein for want of a sufficient basis therefor. The president ought not to have confined himself to consulting with the secretary of the corporation, who was not a director, as required by the articles of incorporation, but he ought to have called a meeting of the board of directors and given an opportunity to Cortés to state before them the reasons he had for acting as he did. The

situation would then have been discussed and settled in a lawful way, and the necessary measures for the liquidation and dissolution of the company in accordance with the law might have been adopted. If the interests of Valdés were important, so also were those of the defendant, who, besides his capital, had his credit involved in the matter. The fact that the actual capital invested by Valdés was two or three times larger than that invested by Cortés did not alter the situation essentially.

The corporation was not Valdés personally, nor the president alone; similarly it was not identical with either Cortés personally, or the treasurer-manager. It was, as we stated before, a juridical person, distinct from the stockholders who composed it, and governed, in accordance with its charter, by its board of directors. That board alone was entitled to act. What was done after the controversy herein arose could and should have been done before, and this suit would have been avoided.

The appellee argues that, in any event, the question as to whether or not the president of the corporation had authority to remove the treasurer-manager from his position as manager is immaterial, since the action of the president was duly ratified by the board of directors.

In order to prove such ratification evidence was introduced in regard to facts occurring after the filing of the complaint, which was not amended to include those facts. The defendant objected to the introduction of this evidence and, upon the admission thereof by the trial court, he took an exception. He now assigns this action of the lower court as error.

We think that the appellant is right. This court has heretofore held, in *Martínez* v. *Porto Rico Railway, Light & Power Co.*, 20 P.R.R. 381, that—

"Documents reciting facts which occurred after the filing of the complaint are not admissible in evidence unless the complaint is amended and an allegation made to support such evidence."

But even admitting that the evidence as to ratification was properly received, we think that all that was shown thereby was that the annual meeting of stockholders of Cortés & Segura, Inc., which should have been held on August 9, 1925, took place on January 2, 1926; that it was attended by Adolfo Valdés, who represented 331 shares of stock, by M. R. Pesquera, who represented 4, and by F. J. Rodríguez, who represented 4; that the other stockholder, Cortés, who had been duly notified, did not attend; that it was recorded in the minutes that, as the capital stock issued and fully paid consisted of 499 shares, more than two thirds thereof were represented at the meeting, and that the meeting proceeded to the consideration of matters and the adoption of resolutions, among which there was one by virtue whereof the action of the president in regard to the removal of Cortés and liquidation of "El Mundo Elegante" was ratified. What was the effect of such ratification? In our opinion it is evident that Cortés was duly removed from his office as treasurer-manager as of January 2, 1926. But the ratification could not change the lawful attitude of the defendant into a wrongful act. At the time of his refusal to relinquish the management and of the filing of the complaint, as well as when the corporate property was taken away from the defendant, the latter was acting within the law and, consequently, he was not withholding the possession wrongfully. Although the term of one year for which he had been appointed had expired, as his successor had not been appointed, he continued as such treasurer-manager by express provision of the articles of incorporation. (Article 8th, *supra.*)

In Ruling Case Law (vol. 23, page 23), it is said: "Generally speaking, in an action of replevin, the right to the possession of the property at the time suit is brought is the only matter in controversy, and the only question that can be tried and decided therein." And further (page 24): "The burden of proof is upon the plaintiff in replevin to show that at the time of the commencement of the action

he was the owner, that he was entitled to the immediate possession of the property, and that the defendant wrongfully detains it.''

It is true that the action herein appears to have been instituted by the corporation and that there is no doubt that the corporation was the owner and entitled to the possession; but the evidence shows that, at the time of the filing of the complaint, the defendant was acting for the corporation and by virtue of powers that the corporation itself had conferred upon him. In order to effect a change in this status, the action of the president, under the attendant circumstances herein, was not sufficient. Action by the corporation itself, in the manner authorized by law, was required. Undoubtedly, the resolutions adopted by the board on January 2, 1926, must be accorded great weight, but they cannot overcome the right of the defendant to act as he acted at the time he did. The situation at that moment, and at no other, can be the subject of investigation and decision in the present action.

Lastly, the appellee raises in its brief the following question:

''We have said and now repeat that the controversy herein has become essentially academic. In the present action the judgment of this Hon. Court could only embrace two points: to order the return of the property, that is, to restore the possession, or that the plaintiff pay the value of the property if unable to return the same. If the court concluded that the defendant was entitled to the possession, it would always have to admit that the owner of the store was the corporation. Hence, if the property exists no longer, its possession can not be returned to the defendant; and, as he is not the owner, neither can it be ordered that its value be paid to him, since, at all events, such value belongs to the corporation, which has already come into possession thereof and has duly disposed of it.

''The only question thus left for determination would be: who shall be entitled to the costs; and it is for this purpose only that the court should consider and decide whether or not the corporation was entitled to the possession and to the store in the present action, and whether or not the defendant was rightly removed and by competent authority.

" 'Judgment for costs should be given defendant if entitled to possession at commencement of action, but when his right ceases pending action, he is not entitled to judgment for return of property.' 29 Cal. 312. 36 Cal. 110. 56 Cal. 458. 127 Cal, 653."

We disagree. It is true that if the stock of merchandise in the store was sold and the business itself ceased, things could never be restored to the status existing on December 10, 1925, when the complaint was filed; but this does not mean that because such restoration cannot be made, this court should leave undecided the issues raised. Otherwise, it would have to be admitted that the courts are impotent to give relief in similar cases. And although the dispensing of justice by the courts, as the work of man, must necessarily be an imperfect task, yet the tendency of the law and of the jurisprudence is to make it as perfect as possible.

In cases similar to the one at bar a bond is required for the immediate delivery of the property to the plaintiff. If, after a judgment is rendered for the defendant, the property can not be returned, the question will arise as to whether or not damages have been caused, which the injured party may recover or not according to the applicable facts and the law.

For the, foregoing reasons, it is our opinion that the judgment appealed from should be reversed and another rendered instead for the defendant, with costs.